Good morning, Your Honors. May it please the Court, my name is David Hagighi. I am counsel for Petitioner Mr. Kurniawan Salim. This is the immigration case that's before the Court this morning. Our contention is that the Board abused its discretion in denying the motion to reopen. In Malti v. Ashcroft, the Court specifically held that evidence of continuing violence can constitute change conditions, even where the same type of violence has occurred before. So under Malti, what evidence is needed to show change conditions necessary to permit a motion to reopen? Our position, which we believe is in line with Malti, is that there has to be new evidence showing either increased violence, increased attacks against non-Muslims, decrease in government protection or involvement in protecting minority groups, upsurge in attacks or government participation in persecution. This is the kind of evidence needed to show change conditions, and this is exactly what we submitted. And it is especially important where the Board agreed with the judge that at the time of the merits hearing that things were getting better in Indonesia. Now the new evidence specifically rebuts that position. So as you see, things have changed. In a few minutes, the government attorney is going to get up, and she's going to say, while unfortunate, this kind of violence has happened before. And we don't disagree with that. Violence against Christians has been going on for years in Indonesia. However, that misses the point. As Judge Reinhardt, in your decision, you pointed out, it's not whether there has been this type of violence before, but whether the new violence is qualitatively different. And our evidence shows that it is. We've shown that there's a... What case is that you're referring to? In Malti, Your Honor. And we've shown that there's an upsurge in radicalism. We've shown the articles at the administrative record on 114, 140, and 166. We've shown increased violence. In fact, we showed that by mid-2012, there were double the incidents of violence over previous years. That was at the administrative record 152. We've shown that the government now fails to protect, and that was at 128 and 134. And we've also shown that the government is protecting radical militant groups instead of religious minorities. And that's at administrative record 137, 144, and 168. In fact, we've even shown that in one month alone, in May of 2012, 30 churches were closed by the government, just in one month alone. Were these all Catholic churches, Christian churches? Christian. Were these all Christian churches? Christian churches, yes. Christian. After the original merits hearing, there had been 140 churches closed. Officials are also now, instead of just sitting back, they're forcing the destruction of churches rather than just letting it happen. And that was at administrative record 134, 116, and 128. So our case is very in line with or similar to Malti. There was an original claim, which included evidence showing harassment and violence, but the immigration judge held that things had gotten better. Then, in denying the motion to reopen, the board held that the evidence was simply cumulative of the evidence presented when this case was last before the immigration judge. Can I, is my memory correct, when it was initially before the IJ, it wasn't, the claim wasn't based on his Catholicism or Christianity? He identified himself. I thought he was a Buddhist. Right. He identified himself as a Buddhist, but his wife was Catholic. And in fact, one of the things that had happened to him was that him and his wife were at church where there was a bomb explosion in the parking lot. Did he convert to Catholicism? He has now, yes, Your Honor. So at the time of his initial hearing, he was a Buddhist. Right. And now he's seeking asylum as a Catholic. That's correct, Your Honor. Also, at the time, and this should be, here, let me step back for just a quick second. So it's not just the continuation, but qualitatively different. So if you look at it this way, if Your Honor's compared the record that was before the IJ the first time, and the record submitted here on this motion to reopen, you would see that they are qualitatively different. The types of violence may be the same, but the level and the intensity is different. And we also submitted... Did he focus on Christians or Buddhists? Both, because they're both a minority group in Indonesia. So everything that was considered to be non-Muslim was presented. I thought his first petition was he alleged persecution on account of being ethnically Chinese. Right. So that's part and parcel, Your Honor. If you're ethnically Chinese, 99.9% of the ethnically Chinese are non-Muslim. They're either going to be Buddhist or some denomination of being Christian. So by sight, they are singled out. And that's why the Ninth Circuit came up with the two disfavored groups, the Sayal group, found them to be disfavored members. So their quantum or the amount of persecution that they need to show is minimized as a member of the disfavored group. And now he fits into the second category, the Thampu Bulon case, which also extended it to Christians and Catholics. What belief are you seeking? Your motion to reopen, which was denied? He's seeking asylum, Your Honor. No, no. From us, what belief are you seeking? I'm sorry. I didn't hear you. From this Court, what do you want us to do? Well, to remand to do what? Remand so that the case can go before an evidentiary hearing in front of the judge. Are you asking us to direct the BIA to reopen the case? To reopen the case. Or to reconsider? To reopen so that it can go before an IJ for an evidentiary hearing. You want us to conclude that substantial evidence did not support the BIA's determination that the change circumstances exception to the timeliness bar is met in this case. Exactly. And that they abused their discretion. Yes. In finding that it wasn't. That it wasn't. Yes. Right. You want to save the rest of your time for rebuttal? I do. I just want to make one more point, and I'll sit down, Your Honor. If you take a look at the family planning case that we presented, there was no question that coercive family planning has been going on in China for a long time. However, the applicant at the Eleventh Circuit was granted after he showed that the rule was being enforced with new intensity. And that's what's happening here. And with that, I'll sit down. Thank you. Does he have two U.S. citizen children? He does. He has one that's turning 13 years old and the second one who's turning 6 years old. Yeah. May it please the Court, good morning. My name is Tracy Jones, and I'm representing the respondent, Loretta E. Lynch. The agency did not abuse its discretion in denying the untimely motion to reopen, and the Court should therefore deny the position for review. In this case, the petitioner is not necessarily contesting the fact that his March 15, 2013, motion to reopen was untimely. Instead, he's suggesting that the time limitations on a motion to reopen should be excused because he demonstrated changed country conditions. However, there are no changed country conditions here, and the evidence in the record supports that. In the record, as Your Honors noted earlier in the petitioner's argument, at the mayor's hearing in 2006, the petitioner was making a totally different claim than what he's making now. The claim that he was making — That makes it rather odd to say that the evidence is only cumulative if it was a totally different claim. Well, Your Honor, the petitioner did not submit any additional evidence with the motion to reopen to reflect the country conditions in 2006. Yes, he did. But he put in a lot of evidence. In fact, I was wondering when I read the BIA's opinion whether the BIA even read the evidence that the petitioner submitted. Yes. The evidence that the petitioner submitted in reference to Christians in Indonesia, which could be found in the administrative record at 370 to 373, consisted of three articles. And those three articles did indicate that Christians are mistreated in Indonesia and that there are some church bombings. And the evidence that the petitioner submitted with his motion to reopen is a continuation of that. The articles that he submitted discuss church bombings. It also discusses the mistreatment in general of Christians in Indonesia. And this evidence is just a continuation of what was presented at the merits hearing in 2006. Yes, but this was a different claim. Yes, that's correct, Your Honor. In other words, they considered this evidence, to the extent that it was relevant, they considered it with respect to the claim that he was either Buddhist or Chinese. And now, because of his conversion to Catholicism, don't they have to consider it again in light of that changed fact? Well, the agency is required to consider the evidence in the record. And the evidence that the petitioner submitted was very limited with respect to his claim of being a Christian Indonesian. If he wanted to submit additional evidence, he could have did so with his motion to reopen, yet he failed to do so. So, therefore, the agency only had the limited evidence that he submitted at the time of his merits hearing. So, with his motion to reopen, he submitted no additional evidence? He submitted the evidence of the country conditions currently, not the evidence of the country conditions at the time of the merits hearing. But that's not the way you evaluated it. You said this was cumulative, and taking it together, it wasn't enough. Right. All right. So you considered what he offered initially as the old country conditions? Yes, at the time of the hearing in 2006. All right. So you were satisfied that that was the old country conditions. And you're saying that what he submitted now doesn't show a change in country conditions? Yes. Okay. And I think Judge Wardlaw was suggesting that there was substantial additional evidence that showed that country conditions were much worse. Well, Your Honor, he did, like I mentioned before, the limited evidence that was submitted at the time of the merits hearing discusses the same mistreatment that the Christian Indonesians are experiencing, according to the evidence that he submitted with the motion. But why would the judge have even considered all of the stuff related to Christians when he was the first time just talking about his ethnicity being Chinese? Yes. Why? Well, he did. I mean, it wasn't relevant.  Did the BIA this time around just not believe that he had converted to Catholicism? Well, there was some questions about that as well, Your Honor. Are they allowed to make adverse credibility findings on a motion to reopen? But no, Your Honor. The board did not make an adverse credibility finding in this case. How can they question? Don't they have to take that as true on the motion to reopen, that he says he's converted? Well, that wasn't what the agency relied on, Your Honor. The agency merely relied on the fact that he did not demonstrate a change in conditions. As you have pointed out, his claim at the merits hearing was a completely different claim than the one he's presenting now. So you're saying that he can't bring a different claim? No, I'm not saying that, Your Honor. What I'm trying to address at this point is that. What the board's position was and not, like, you know, sort of, you know, snidely saying, well, last time he was a Buddhist and, you know. Yes, and I understand the Court's concern, Your Honor. But the Petitioner did submit some evidence, even though that was not his claim in 2006. So he treated that as the old country conditions, very limited evidence of the old country conditions. Exactly. And this time he submitted about 80 pages describing the rising religious intolerance in Indonesia. And you're saying that that does not reflect anything new. It's merely the same as it was before. Yes, that's correct, Your Honor. And so the question is, if we read all the material he submitted and it appears to show a substantial increase in the treatment of Christians, then there would not be substantial evidence supporting your conclusion. If the Court finds that, Your Honor. But in this instance, I don't think the Court will. But the roughly 80 pages doesn't show anything different than the 3 pages did originally. Correct, Your Honor. And that's the whole issue? That's our position with regards to the changed country conditions, yes. Now, the Petitioner also didn't demonstrate prana-facial eligibility for relief. The Petitioner, being a Christian Indonesian, is a member of a disfavored group. Is that part of the BIA's decision on this? Yes, Your Honor. Tell me where that is in the BIA's decision. If you don't mind, I just need to reference it. In the second paragraph, I'm sorry, the third paragraph, Your Honor, where it states on the fact of Christian faith and that his children are United States citizens. If you continue on, it says there's nothing of evidence that relates specifically to the respondent. And that is going to the individualized risk for disfavored social groups. There's nothing in the evidence that suggests that he was a Catholic? I'm sorry. Are you reading from the decision, Your Honor? No. Yes. I was looking at the sentence you just read. It says there's nothing in the evidence submitted that relates specifically to the respondent. Yes, with regards to... What does that mean? That it doesn't show that he's a Catholic? No, that is merely saying that he didn't establish that he has an individualized risk if he returns to Indonesia. Under the disfavored group analysis, the petitioner is still required to present evidence of individualized risk. Just being a mere member of this disfavored group does not automatically meet your burden of proof. You still have to demonstrate an individualized risk, but the petitioner has failed to do so here. Meaning, for instance, if Hitler says we're going to kill all the Jews and you're Jewish, that's not enough to entitle you to asylum? Well, in that instance, Your Honor, that case might be somewhat different because that might be enough to demonstrate a pattern or practice of persecution, which the petitioner is not arguing here. He's merely arguing he's a member of the disfavored group and he has an individualized risk, which he failed to show here. The disfavored group is merely an evidentiary concept. So when you're a member and it has been determined that you're a member of this group, it does not automatically meet your burden of proof. What do you have to show them? Once you show that country conditions have changed and they're now persecuting Christians, what would you have to show that you face an individualized risk? That he will be targeted, mistreated, or treated any differently than any other member of the disfavored group. And the petitioner has not shown that here. The petitioner has submitted a letter from his sister indicating that there continue to be church bombings, that the local police are preventing Christians from practicing their religion, and that her church was in fact closed. However, this does not demonstrate that the petitioner himself would have suffered any individualized risk if returned to Indonesia. Do you think his U.S. children have a claim for asylum on the basis of the growing anti-U.S. hatred and violence? Your Honor, the petitioner did not submit any evidence to support this fact. Well, the letter from his sister talks about that. It does. And we sort of generally know what's happening. Yes, Your Honor. The sister's letter definitely did address it. The petitioner also submitted other articles indicating that there are anti-U.S. protests that's going on in Indonesia. However, the anti-U.S. protests that are going on in Indonesia are merely related to an anti-Islamic movie that was released, that was created in the United States. There's no evidence in the record outside of the sister's letter that indicates that American citizens are targeted or harmed, or, for that matter, United States citizen children. I see my time has expired. I would just like to conclude. The agency properly denied the untimely motion to reopen and did not abuse its discretion in doing so, and this Court should deny the petition for review. Thank you. Thank you. Thank you. Your Honors, I'd like to pick up exactly where counsel left off. She said that there was no prima facie case here because of individualized risk. The individualized risk must be compared to the population in general, not compared to others in the disfavored group. One's chances of being singled out from the general population and subjected to persecution is often strongly correlated with the frequency with which others who share the same disfavored characteristics are mistreated and persecuted. That was Halim V. Holder quoting Wakari V. Holder. So there is no requirement that the harm be worse or different from that suffered by other members of the group. The question is whether he will be singled out from the general population, not others in the disfavored group. And he's shown that. threats and violence, even if not sufficient to compel a finding of task persecution, are indicative of individualized risk of future harm. The threats and violence to him or in general? To him. He had the task. Not as a Christian. Well, he had it, and it's also happened to his family. At the original merits hearing before the IJ. If you take a look at the pictures from pages. And of course. One quick second. If you just take a look at the pictures on pages 453 to 464, you will see how his brother was cut alongside his neck, his shoulder, and his hand. And the IJ opined that that attack was not persecution on the brother or onto the petitioner. That's at administrative record 251. And I would ask the panel to please read that paragraph. And then compare it to the administrative record on page 55 when the brother filed asylum and was granted asylum in May of 2012. The BIA completely ignored that. Not one word that the brother's case was granted. Nothing to show that this is qualitative. Because it wouldn't fit within their denial. How could they compare the two? No, no. But is there anything in the record to indicate why there was a different outcome with respect to the brother? Because the IJ in the first case never had that case before him. The question is, what in the record shows why the brother was granted asylum? No, there's nothing in the record, per se, that shows that. But if you take a look at the record. The record is 500 and something pages long. So this thing of, you know, that the record wasn't complete here, that we didn't have something from 2006 to compare to what's happening now, that's not entirely accurate. The record is fully been made of what was happening in the past and what's happening here in the future. Now, we have one brother who was granted asylum after the original merits hearing. On what basis? Persecution? Persecution as ethnically Chinese. Okay. Okay, so they share the same characteristics. The brother is Buddhist, not Christian. He's Christian, so his threat level is even higher. We've submitted the letter from the sister. She's saying that the police are not protecting us. We can't go to church. We're afraid to go to church. Now, as to the United States citizen children, we've shown pictures, and if you take a look at the administrative record at pages 91 through 96, you'll see the pictures of American flags being burned. You'll see signs of USA go to hell. I mean, how can, if these people are deported tomorrow, how can they not take their children? I mean, this thing in the BIA's decision, it's just incredible that a judge would write this. In the third paragraph, it says, nor are the children required to go to Indonesia. What does that mean? Abandon the children? A 13-year-old and a 6-year-old here? Really? All right. I think we understand. Can I ask you one quick question? Would he, on the basis of now his brother is not yet a citizen, I take it? Right. He's a green card holder. So he wouldn't be eligible, your client, to apply for a derivative? No. Unfortunately, no. My client would potentially be eligible once his oldest child is 21, which is 8 years from now, and which now outside of this appeal, the government, why they're not following the memo that was given by the department, by the- The Morton memo? Yeah, the Morton memo. Not the Morton memo, the J. Johnson memo. Is that the one that's enjoined by the Texas court? No, it's not enjoined, your Honor. No. All it is, it's setting forward the priorities. There are three priorities. He doesn't meet any of those priorities. He doesn't have a criminal record? No criminal record. No criminal record. By all accounts, for lack of a better word, they are perfect citizens. They've been here, what, for about 16 years. They have their children. They're paying their taxes. They're just afraid to go back to a country where the harm towards that particular group has intensified. Would this be a case for some sort of mediation? We've tried, your Honor. I've tried all along. And it's not fault of the counsel. She actually, Ms. Jones, has tried very hard, but her clients are just not willing. Okay. Who's her client in this, DHS? Yeah. Yes, your Honor. In this case, the client is DHS. They have reviewed this case and have declined to exercise prosecutorial discretion to the petitioner in this case. And have they participated in a Ninth Circuit mediation? Yes, they have, earlier on in the case before briefing. Well, I don't think it will be necessary in this case. Yes. And this Court has already ruled in the 2016 decision. We'll try to give you a decision that will avoid a need for mediation. Okay. No, I just wanted to mention that the 2016 decision basically indicated that prosecutorial discretion is out of this Court's jurisdiction of purview. Oh, we understand that. Okay. I just wanted to make sure. You don't have to say that. Sometimes we like to give you an opportunity to think about what the government's really here for and what it wants to do. Sometimes we think you may have overlooked things like justice, so we try to give you another chance. It doesn't always work, but it does sometimes. Well, I appreciate the chance. Ms. Jones and I have worked on a previous case before, and she was able to convince her client to give prosecutorial discretion. Unfortunately, from my understanding, it seems somewhat arbitrary, and they don't tell us why they're not. That's what discretion is. Exactly. It's in their discretion. Exactly. Thank you both very much.  Thank you. The case just argued will be submitted.
judges: Reinhardt, Wardlaw, Korman